UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:17-cr-10064-WGY |
| RAFAEL REYES | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY

The United States of America files this Opposition to the Motion for Discovery and supporting papers (Dkt. Nos. 37 and 38) filed by defendant Rafael Reyes.  Defendant's motion generally seeks four categories of discovery material: (1) all witness statements and reports concerning Mr. Reyes; (2) all disciplinary reports and other information concerning all officers and agents involved; (3) all reports relating to prior arrests of Mr. Reyes; and (4) copies of criminal records and other information about cooperating witnesses.

As further outlined below, defendant's requests are some combination of  (1) attempts to get early to *Jencks* or *Giglio* material, which this Court should deny; (2) fishing expeditions seeking evidence that is not required to be produced under the criminal discovery rules, which this Court should reject; and (3) attempts to restate *Brady* requirements, which this Court should also reject because the government is aware of its obligations.  The government is in compliance with—and aware of its obligations under—the local discovery rules.  This Court should deny defendant's Motion.

## RESPONSE TO BACKGROUND SECTIONS

Defendant's Memorandum in Support contains a Preliminary Statement, Procedural History, and Relevant Facts.  *See* Dkt. No. 38 at pp. 1-6.  Instead of listing every complaint with the defendant's characterization of the factual background and procedural history, the government highlights only the following:

*First*, the defendant is charged with possession with intent to distribute fentanyl and cocaine based on seizures made during the execution of search warrants at residents owned by the defendant.  Defendant highlights the surveillance of the defendant and a confidential informant during certain underlying controlled buys, but the government has *not* charged the defendant with any of those controlled buys and the confidential informant is *not* a witness at this time.  The only charges against the defendant are based on evidence seized during the execution of subsequent search warrants.

*Second*, the defendant has made no showing—and the government is not aware of any information suggesting—that there was any infirmity in the state search warrants or that the affiant made any false statements in the warrant.

*Third*, the defendant makes much about an unrelated 2002 case in which Detective Dreher of the New Bedford Police was found by a state court judge of having engaged in misconduct.  Detective Dreher was *not* the affiant for the search warrants that led to the seizure of evidence in this case, and importantly, he is *not* a witness the government expects to call in its case-in-chief.

**Response to request for "all reports and witness statements
of law enforcement agents, informants, and others."**

Defendant's first request seeks "all reports and witness statements of law
enforcement agents, informants, and others" based on a generalized argument that
"they are reasonably likely to contain material and exculpatory information that
will be relevant to Mr. Reyes's motion to suppress and trial preparation." Memo. at
1. Defendant's argument to the contrary notwithstanding, this is a classic attempt
at seeking early disclosure of *Jencks* material. As the government stated in its
objections, "such information is not the proper subject of discovery requests at this
stage" and the government is under no obligation to produce "all reports and
witness statements."

To the extent defendant claims that he is only seeking exculpatory *Brady*
material within reports and witness statements, *see* Memo. at 10, no discovery
motion practice is necessary. The government is aware of its *Brady* obligations (and
its obligations under the local rules) and it is committed to complying with them.

**Response to request for "any and all disciplinary records of the
law enforcement agents who conducted the investigation."**

Defendant's second request seeks "any and all disciplinary records of the law
enforcement agents who conducted this investigation" based on an argument that
"Mr. Reyes believes that these records will cast doubt on the credibility of key
witnesses and provide potentially exculpatory information." Memo. at 2; *see also*
Memo. at 11-12. The genesis of these requests seems to be an adverse finding
against Det. Dreher in an unrelated 2002 state prosecution of an entirely unrelated

individual.  Det. Dreher was a relatively minor player in this investigation who will *not* be a witness for the government in this case.

The defendant's requests are the result of the defendant facing the unfortunate reality that the evidence here was seized pursuant to search warrants, and in such cases, "a court ordinarily limits its inquiry to the four corners of the supporting affidavit, which is afforded a presumption of validity."  *United States v. Sliwa*, 109 F. Supp. 3d 360, 363 (D. Mass. 2015) (citing *Franks v. Delaware,* 438 U.S. 154, 171 (1978), *United States v. Tanguay,* 787 F.3d 44, 53 (1st Cir. 2015), and *United States v. Tzannos,* 460 F.3d 128, 136 (1st Cir. 2006).

Here, the affiant was Det. Lavar Gilbert (not Det. Dreher), and there is no suggestion that Det. Gilbert made any deliberate falsehoods or misrepresentations in obtaining the warrants (or that he had anything to do with Det. Dreher engaging in some misconduct in an unrelated case against an unrelated defendant *fifteen years* ago).

In any event, to the extent that this request purports to seek impeachment material under *Giglio* and its progeny, as the government has informed the defendant, Det. Dreher is *not* a witness for the government in this case.  More importantly, to the extent that this request purports to seek exculpatory material under *Brady* and its progeny, the government is already obligated to produce exculpatory material (whether it relates to Det. Dreher or anyone else).  The government is not aware of any such exculpatory material.

The government is committed to complying with the local rules and its discovery obligations, but the government has no obligation to seek out and produce "all disciplinary information regarding any law enforcement agent or officer who participated in the investigation of Mr. Reyes," especially if they are not even witnesses at trial. To the extent the defendant still wishes to obtain historical disciplinary reports of all the officers involved, the defendant can seek to do so directly from the New Bedford Police Department, or the defendant can otherwise subpoena materials that may aid in his defense. The government simply has no obligation to provide such materials and information about non-witnesses.

**Response to request for "all reports relating to prior arrests" of Reyes.**

This request is also improper. The request cites Fed. R. Crim. P. 16(a)(1)(D), but that rule only requires that the government furnish "a copy of the defendant's prior criminal record that is within the government's possession, custody, or control if the attorney for the government knows—or through due diligence could know—that the record exists." The government has already complied with that request and furnished the defendant's criminal record. That rule says nothing about—and the government is not obligated to search for and provide—copies of all prior police reports involving the defendant.

The government also notes that these records are not necessarily in the possession, custody, or control of the government, and more importantly, are public records that the defendant can again obtain himself directly from the New Bedford Police Department should he choose (assuming, of course, that he does not already have his prior arrest reports from his prior criminal cases).

Notwithstanding the above, and without conceding that the government has any obligation to locate and produce these reports, the government will ask the New Bedford Police Department for copies of prior arrest reports of Mr. Reyes and will provide what it receives to the defense.

**Response to request for "redacted copies of the criminal records of all cooperating witnesses and confidential informants."**

This request is improper and should also be rejected.  As an initial matter, the government notes that original requests made by the defendant during the meet and confer process were not limited to redacted copies of anything, but sought "copies of the criminal records of any cooperating witness or confidential informant who assisted in the investigation, including but not limited to the 'Reliable Confidential Informant' identified in Detective Lavar Gilbert's affidavit."  *See* Ex. D, Request 13.  The government objected and provided case law outlining the government's informant privilege.  *See* Ex. E, Responses 1 and 13.

As the government noted in its objection letter, the government's privilege under *Roviaro v. United States*, 353 U.S. 53 (1957) and its progeny protects more than just the name of the informant and extends to information that would tend to reveal the identity of the informant.  *See, e.g.*, *United States v. Tzannos*, 460 F.3d 128 (2006).  Indeed, where the government informant is not an actual participant or witness to the charged offense, disclosure is required only in exceptional circumstances and only upon a specific showing by the defendant.  *See, e.g.*, *United States v. Martinez*, 922 F.2d 914 (1st Cir. 1991).  Here, the confidential informant is *not* an actual participant or witness to the offenses charged because the controlled

buys have *not* been charged and the only present charges involve the drugs seized during the execution of the search warrants.

Accordingly, the relevant issue here is the four corners of Det. Gilbert's affidavit and whether it contains "a false statement or omission" that was "made knowingly or intentionally or with reckless disregard for the truth" and the false statement was "necessary to the finding of probable case." *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2015). Here, there is no allegation that Det. Gilbert's affidavit contained material false statements necessary to the finding of probable cause and the government is not aware of any such information. There is simply no basis to allow the defense to pierce the government's informant privilege in a fishing expedition for such information, especially when there has been no offer of proof to believe such information exists in the first place.

**<u>Response to request that government produce materials by August 15.</u>**

Finally, the defendant's motion asks that the government produce certain materials by August 15, 2017. The government is aware of its continuing discovery obligations and anticipates making a supplemental production by August 15, 2017. However, no order needs to be entered to this effect. Among other reasons, some of the material the government has agreed to produce (e.g., DNA and fingerprint analysis) may not be available by then. As the government has informed the defense, it will make a supplemental production in short order of the materials currently in its possession, and it will make further supplemental productions as additional materials become available.

For the reasons stated above, the government requests that the Court DENY defendant's Motion for Discovery.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:     /s/ Kunal Pasricha

KUNAL PASRICHA
GLENN A. MACKINLAY
Assistant United States Attorneys

District of Massachusetts
One Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3203

Dated: July 28, 2017

**CERTIFICATE OF SERVICE**

I, Kunal Pasricha, certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to any non-registered participants on this date.

By:   /s/ Kunal Pasricha
      KUNAL PASRICHA
      Assistant United States Attorney